UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AHMED AL-SHAIKLI,<br><br>    Plaintiff,<br><br>v.<br><br>TRANS UNION, LLC,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    C.A. NO.<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

### I.   PRELIMINARY STATEMENT

1. This is a consumer class action based upon Defendant Trans Union, LLC's continuing, repeated and flagrant violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 – 1681x ("FCRA") with respect to the inclusion of terrorist watch list information on consumer reports that it creates.

2. Defendant violates the important protections in the FCRA by improperly and inaccurately associating innocent consumers such as Plaintiff with terrorists (and others considered enemies of the United States) subject to U.S. government sanctions.

3. Plaintiff is no terrorist. He was a lawful U.S. permanent resident who proudly became a naturalized U.S. citizen and who bravely served the U.S. military as a contractor.

4. Defendant is well aware of the FCRA's requirements with respect to the inclusion of terrorist watch list information about individuals on its reports – it has twice previously been repudiated by juries with compensatory and punitive damages awards, and then by two different

U.S. Courts of Appeals including the Third Circuit, for its "reprehensible" failure to use adequate identifying information to "assure" that any terrorist watch list information it associates with a consumer in fact pertains to that individual.  *See Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010); *Ramirez v. Trans Union, LLC*, 951 F.3d 1008 (9th Cir. 2020). In each instance, Defendant claimed it would improve its procedures to avoid future misreporting.

5. But Trans Union continues to associate highly derogatory terrorist watchlist information with innocent consumers in a cavalier fashion and without using all available personal identifying information, as it did with Plaintiff. Indeed, the only personal identifier that "matched" Plaintiff to either of the two record entries on the OFAC list that Trans Union associated with him is the first name "Ahmed," a common Arabic name. Defendant's conduct deprives consumers of their rights under federal law and results in widespread harm.

## II.     JURISDICTION & VENUE

6. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

7. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## III.     PARTIES

8. Plaintiff Ahmed Al-Shaikli is an adult individual who resides in Mount Joy, Pennsylvania.

9. Defendant Trans Union, LLC ("Trans Union" or "Defendant") is a consumer reporting agency that regularly conducts business in the State of Pennsylvania, and which has a principal place of business in Chester, Pennsylvania.

## IV. FACTUAL ALLEGATIONS

### A. The United States Treasury Department's Office of Foreign Assets Control and Its List of Specially Designated Nationals and Blocked Persons

10. The United States Treasury Department's Office of Foreign Assets Control ("OFAC") "administers and enforces economic trade sanctions based on U.S. foreign policy and national security goals against threats to national security, foreign policy or economy of the United States." *Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 413 (N.D. Cal. 2014) (citation omitted).[1]

11. OFAC directs those sanctions at, among others, terrorists, international narcotics traffickers, and persons involved in the proliferation of weapons of mass destruction, and publishes a list of those "Specially Designated Nationals" ("SDNs") and "Blocked Persons" on its website (the "OFAC List").[2]

12. Persons on the OFAC List are legally ineligible for credit in the United States, may not be employed, and may even be subject to deportation or criminal prosecution.

13. The full OFAC List as maintained by the Treasury Department is publicly available information, and whether a person is on the OFAC List is a matter of public record.

14. Persons in the United States are generally prohibited from doing business with, including extending credit to, individuals on the OFAC List. Noncompliance carries potential civil and criminal penalties. *See* 31 C.F.R. § 501 App. A, II.

### B. The Inclusion of OFAC Information On Consumer Reports Is Regulated By Federal Law

15. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant,

---

[1] *See also*, U.S. Dep't of the Treasury, *OFAC FAQs: General Questions*, https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_general.aspx (last visited August 24, 2020).

[2] United States Treasury Dep't, *Specially Designated Nationals and Blocked Persons List*, https://www.treasury.gov/ofac/downloads/sdnlist.pdf (last visited August 24, 2020).

and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

16. The FCRA requires that CRAs "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report related." 15 U.S.C. § 1681e(b).

17. The maximum possible accuracy standard "requires more than merely allowing for the *possibility* of accuracy," meaning that CRAs do not meet that standard by suggesting that certain consumers as "possible" matches for individuals on the OFAC List. *Ramirez v. Trans Union, LLC*, No.12-cv-00632-JSC, 2017 WL 1133161, at *5 (N.D. Cal. Mar. 27, 2017) (quoting *Cortez*, 617 F.3d at 709) (emphasis added).

18. In 2010 in *Cortez*, the U.S. Court of Appeals for the Third Circuit found that OFAC information is subject to the maximum possible accuracy standard, and that Trans Union acted in willful violation of FCRA by using only first and last name to associate consumers with criminals on the OFAC list. 617 F.3d at 707-08, 723. The Third Circuit found that Trans Union's failure to "at the very least" use date of birth where available was reprehensible and warranted punitive damages. *Id.* at 723.

19. Later, when Trans Union faced a class action lawsuit regarding the FCRA section 1681e(b) claims of a class of 8,192 individuals who Trans Union inaccurately associated with the OFAC list, the class claims were certified and went to trial. *Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 413 (N.D. Cal. 2014). A jury found that the CRA's matching procedures willfully violated the FCRA and the Ninth Circuit affirmed, upholding $40 million in statutory and punitive damages. *Ramirez v. Trans Union, LLC*, No. 3:12-cv-632-JSC, 2017 WL 5153280, at *2-3 (N.D. Cal. Nov. 7, 2017) (upholding jury's verdict), *aff'd* 951 F.3d 1008 (9th Cir. 2020).

20. Moreover, CRAs may not shift their duty to assure accuracy onto the users of the information that they sell. *Ramirez*, 2017 WL 1133161, at *4 (*citing* Cortez, 617 F.3d at 708).

### C. Defendant's History of Selling Inaccurate OFAC Records

22. Defendant is one of the "Big Three" consumer reporting agencies in the United States, and is regulated by the FCRA.

23. Trans Union is well aware of the implications of noncompliance with federal regulations pertaining to doing business with individuals on the OFAC list, in light of its participation in the *Cortez* and *Ramirez* litigation.

24. The *Cortez* lawsuit stemmed from Trans Union's March 2005 report about Sandra Cortez which contained an OFAC record for a drug trafficker named Sandra Cortes Quintero. Trans Union did not compare the date of birth it had for Ms. Cortez's to the date of birth available on the OFAC record, which was completely different. Instead, Trans Union created the match using only a first and last name, and did not require an exact match (permitting a match between "Corte**z**" and "Corte**s**.").

25. The *Cortez* jury and the Third Circuit both repudiated this matching practice, finding it reprehensible and in willful violation of the FCRA.

26. Trans Union, however, made no substantive changes to its procedures for associating consumers with the OFAC list – it continued to use only first and last names, and did not consider dates of birth where available.

27. In March 2011, Trans Union created a consumer report about Sergio L. Ramirez to that included OFAC records about a "Sergio Humberto Ramirez Aguirre" and a "Sergio Alberto Ramirez Rivera." Once again, Trans Union failed to consider the dates of birth on the records, which were completely different from the individual who was the subject of the report.

28. In *Ramirez,* discovery determined that Trans Union applied this same procedure to 8,192 other individuals, over only a six-month period in 2011.[3]

29. During the course of the *Ramirez* litigation and trial, Trans Union represented that it gained the ability to consider dates of birth in the matching procedures used for OFAC records in 2013.

30. Nevertheless, Trans Union has continued to disregard dates of birth available on the OFAC records that it associates with consumers, instead placing OFAC alerts on the reports of consumers where it is clear from the face of the report that the date of birth of the OFAC criminal is different from the consumer who is the subject of the report.

31. Trans Union furthermore continues to place OFAC alerts on consumer reports even where the name of the OFAC criminal does not match the name of the consumer who is the subject of the report.

32. Additionally, despite being on clear notice from the *Cortez* and *Ramirez* cases that it must not include on reports OFAC records that do not in fact pertain to the individual who is the subject of the report, Trans Union continues to state that OFAC records are merely "potential" matches.

33. Trans Union fails to follow reasonable procedures to assure the maximum possible accuracy of the OFAC information it sells about consumers, regularly making inaccurate associations between innocent people with criminals on the OFAC list.

---

[3] Notably, this number is limited to individuals who had requested a copy of their consumer report pursuant to FCRA section 1681g during that six month period and were sent a response via U.S. mail. It does not include all individuals about whom Tran Union prepared a report containing an OFAC record – that number was almost certainly substantially higher.

34. Trans Union's practices for including references to OFAC information on the consumer reports it prepares are uniform and not unique to each consumer or transaction.

35. Trans Union's inclusion of OFAC alert information on reports is not accidental, but instead a result of deliberately designed policies and procedures intended to maximize profits and to protect the interests of its paying clients, sometimes at the expense of innocent consumers.

36. At all relevant times, Defendant's conduct, as well as that of its agents, servants, and/or employees who were acting within the course and scope of their agency or employment and under the direct supervision and control of Defendant, was intentional, willful, reckless, and in grossly negligent disregard for the rights of consumers, including Plaintiff.

**D. The Experience of Plaintiff Ahmed Al-Shaikli**

37. In or about March 2020, Plaintiff Ahmed Al-Shaikli sought pre-approval of mortgage to purchase a house.

38. Plaintiff's mortgage applications were denied on the basis of information in his consumer report.

39. In order to find out more about the reason(s) he was denied, Plaintiff requested copies of his consumer reports from the Big Three credit reporting agencies, Equifax, Experian, and Trans Union.

40. Plaintiff's Equifax and Experian consumer reports did not contain anything unusual.

41. In response to Plaintiff's request, Trans Union prepared a consumer report about Plaintiff dated April 8, 2020, and sent it to Plaintiff.

42. Plaintiff reviewed the April 8, 2020 Trans Union report, and was shocked to learn that Trans Union had included two different OFAC records that Trans Union stated "might" pertain to him and with which his name allegedly is a "potential" match.

43. Trans Union stated on its April 8, 2020 report that it had compared the name on his credit file, "Ahmed B. Al Shaikli" to OFAC records, and as a result included *two different* OFAC records on the report.

44. For the first OFAC record, Trans Union stated that the "MATCHING NAME" was "Ahmed Al-Jubouri," despite the fact that this is an entirely different last name from Plaintiff's. Furthermore, the date of birth associated with this OFAC record for Al-Jubouri according to the Trans Union report is July 1, 1967, almost twenty years earlier than Plaintiff's date of birth.

45. For the second OFAC record, Trans Union again stated that there is a "MATCHING NAME" – this time that of "Ahmed Al Kurd," despite the fact that this is also an entirely different last name from Plaintiff's. The date of birth associated with this OFAC record for Al Kurd according to the Trans Union report is "circa 1949," more than thirty-five years prior to Plaintiff's year of birth.

46. Plaintiff is not on the OFAC list or any other government watch list, his name does not match any name on the OFAC SDN list, and his year of birth is 1986, as Trans Union knows from the ordinary credit records it regularly obtains about Plaintiff from his creditors and which it has "on file" about him, including at the time of the creation of the April 8, 2020 report.

47. The only matching item of information between Plaintiff and the two OFAC record entries is the first name "Ahmed."

8

48. Despite having Plaintiff's full name, address, social security number, and date of birth, Trans Union did not consider his full name or date of birth when it placed these two different OFAC records on the report it prepared about him.

49. Upon information and belief, Trans Union associated and continues to associate OFAC information with Plaintiff's file using its standardized procedures.

50. Despite having over a decade of notice that failing to use all available personal identifying information to associate OFAC records with individual consumers is an egregious and willful violation of the FCRA, Trans Union has continued to disregard dates of birth and not require strict name matching.

51. In the April 8, 2020 report about Plaintiff, Trans Union stated that it would include these two different OFAC records on the reports it sold and would sell to third parties about him.

52. Trans Union further stated on the April 8, 2020 report about Plaintiff that it had recently sold information from his credit file to numerous creditors, potential creditors and others.

53. Specifically, Trans Union stated that it sold information about Plaintiff to Guaranteed Rate AFFI on March 22, 2020, to NFM, Inc. on March 2, 2020, to Barclays Bank Delaware on October 7, 2019, to Wells Fargo on March 31, 2019, to Homesale Mortgage LLC on February 27, 2019, to GHM Mortgage Service on November 18, 2018.

54. Furthermore, Trans Union states that it provided information about Plaintiff to Discover Financial Services on March 31, 2020, to CitiCards CBNA on February 29, 2020, to Liberty Mutual on January 2 and April 4, 2020, and to the U.S. Department of Housing on March 22, 2020.

55. After learning that Trans Union associated these terrorist records with his file and would continue to sell these records to his prospective creditors and others, Plaintiff was

humiliated and embarrassed, and highly concerned about his reputation with his existing and prospective creditors, and with the government.

56. Furthermore, Plaintiff was and remains frightened about how Trans Union's association of OFAC information with him, and potential reporting to third parties, may affect his ability to travel and to visit his family living abroad.

57. As a result of Trans Union's inaccurate association between Plaintiff with OFAC records related to two entirely different people, Plaintiff suffered damages including harm to reputation, emotional distress, and loss of credit opportunities.

## V. CLASS ACTION ALLEGATIONS

58. Plaintiff brings this action on behalf of the following Classes:

   a. **OFAC Class:** All natural persons residing in the United States and its Territories about whom Defendant prepared a report that included any OFAC record, during the period beginning five (5) years prior to the filing of the Complaint and continuing through the date of the resolution of this case.

   b. **Name Mismatch Subclass:** All members of the OFAC Class whose report included one or more "MATCHING NAME" on the OFAC record(s) included on the report was not a character for character match to at least the first and last name of the individual who was the subject of the report.

   c. **Year of Birth Mismatch Subclass:** All members of the OFAC Class whose report included an OFAC record containing a year of birth which did not match the year of birth of the individual who was the subject of the report.

59. Plaintiff reserves the right to amend the definition of the Classes based on discovery or legal developments.

60. **Numerosity. Fed. R. Civ. P. 23(a)(1).** The members of the Classes are so numerous that joinder of all is impractical. Upon information and belief, the number of consumers harmed by Defendant's practices are more numerous than what could be addressed by joinder, and

those persons' names and addresses are identifiable through documents or other information maintained by Defendant.

61. **Existence and Predominance of Common Questions of Law and Fact.  Fed. R. Civ. P. 23(a)(2).**  Common questions of law and fact exist as to all members of the Classes, and predominate over the questions affecting only individuals.  The common legal and factual questions include, among others: (1) whether Trans Union maintains reasonable procedures to assure maximum possible accuracy of the OFAC information on its consumer reports; and (2) whether Trans Union acted willfully or negligently.

62. **Typicality.  Fed. R. Civ. P. 23(a)(3).**  Plaintiff's claims are typical of each Class Member.  Plaintiff has the same claims for relief that he seeks for absent Class Members.

63. **Adequacy**. **Fed. R. Civ. P. 23(a)(4).**  Plaintiff is an adequate representative of the Classes because his interests are aligned with, and are not antagonistic to, the interests of the members of the Classes he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of members of the Classes.

64. **Predominance and Superiority.  Fed. R. Civ. P. 23(b)(3).**  Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Classes to individually redress effectively the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the

courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## VI. CAUSES OF ACTION

### COUNT I
### (CLASS CLAIM)
### 15 U.S.C. § 1681e(b)

65. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length here.

66. Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable for willfully and negligently failing to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it sold in violation of 15 U.S.C. § 1681e(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

On Count I:

1. An order certifying the case as a class action on behalf of the proposed Class and Subclasses under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

2. An order entering judgment in favor of Plaintiff and the Class and Subclasses and against Defendant for statutory and punitive damages pursuant to 15 U.S.C. § 1681n;

3.   An order entering judgment in favor of Plaintiff and the Class and Subclasses and against Defendant for actual damages pursuant to 15 U.S.C. § 1681o;

4.   An order granting costs and reasonable attorneys' fees;

5.   An award of pre-judgment and post-judgment interest as provided by law; and

6.   Such other relief as the Court deems just and proper.

### TRIAL BY JURY

Plaintiff hereby requests a trial by jury on those causes of action where a trial by jury is allowed by law.

DATE:  August 24, 2020               By:   **FRANCIS MAILMAN SOUMILAS, P.C.**

*/s/ John Soumilas*
JAMES A. FRANCIS
JOHN SOUMILAS
LAUREN KW BRENNAN
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: 215.735.8600
F: 215.940.8000
E: jfrancis@consumerlawfirm.com
E: jsoumilas@consumerlawfirm.com
E: lbrennan@consumerlawfirm.com

*Attorneys for Plaintiff*